IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELODY WILLIAMS,

        Plaintiff,

  v.                                              Civil Action 2:20-cv-6424
                                                Judge Edmund A. Sargus
                                                Magistrate Judge Kimberly A. Jolson

OHIO DEPARTMENT OF
REHABILITATION & CORRECTIONS,
et al.,

        Defendants.

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on a number of Motions filed by several parties in the instant action. The Court first considers Defendants Scotts Miracle-Gro Company's ("Scotts") and Union County Board of Commissioners' ("UCBC") Motions to Dismiss (Docs. 24, 35) and Plaintiff's Motion to Amend (Doc. 36). The Court next considers Plaintiff's Motions for: Temporary Restraining Order (Doc. 2); Temporary and Permanent Restraining Order (Doc. 3); Leave to Invoke Discovery (Doc. 4); Writ of Mandamus (Doc. 5); and Appointment of Counsel (Doc. 6).

For the following reasons, the Undersigned **RECOMMENDS** Scotts' and UCBC's Motions to Dismiss (Docs. 24, 35) be **GRANTED**, and Plaintiff's Motions to Amend (Doc. 36) be **DENIED**. Further, Plaintiff's Motions (Docs. 2–6) are **DENIED without prejudice**. Finally, Plaintiff is **ORDERED** to show cause within **fourteen (14) days** from the date of this Order, why the claims related to her medical treatment should not be dismissed for failure to exhaust.

**I.    BACKGROUND**

Plaintiff is incarcerated at the Ohio Reformatory for Women ("ORW"), located in the city of Marysville, in Union County, Ohio. This is not her first civil rights action. As discussed below,

Plaintiff previously filed at least one prior action on September 7, 2016, in this Court's Western Division. *See Williams v. Ohio Dept. of Rehabilitation and Corr.*, Case No. 3:16–cv–00384. Defendants in that case were granted summary judgment on Plaintiff's inadequate medical care claims because Plaintiff had failed to exhaust her administrative remedies. (*Id*., at Doc. 40, 41, 42). Plaintiff did not appeal that decision. Instead, on December 16, 2020, Plaintiff filed the instant *pro se* Complaint. Plaintiff and two additional inmates initially filed the Complaint as a purported class action. Because, however, *pro se* litigants cannot adequately represent a class and only Plaintiff signed the civil cover sheet, the Undersigned ordered the case be severed. (Doc. 8).

The Complaint's caption identifies the following institutional Defendants: the Ohio Department of Rehabilitation and Corrections ("ODRC"), ORW; the City of Marysville, Scotts, and the United States Department of Environmental Protection ("EPA"). (*See generally* Doc. 1). Also included are eleven individual Defendants each of which is associated with ODRC or ORW. (*Id*.). Along with her Complaint, Plaintiff filed motions for : Temporary Restraining Order (Doc. 2); Temporary and Permanent Restraining Order (Doc. 3); Leave to Invoke Discovery (Doc. 4); Writ of Mandamus (Doc. 5); and Appointment of Counsel (Doc. 6).

After being served, albeit deficiently, Defendants Scotts and UCBC moved to dismiss Plaintiff's Complaint. (Doc. 24, 35). Shortly thereafter, Plaintiff moved to amend her Complaint, seeking to add additional claims, parties and relief. (Doc. 36). These Motions, as well as those Plaintiff filed along with her Complaint, are now ripe for review.

## II. MOTIONS TO DISMISS & AMEND

In their respective Motions, Defendants Scotts and UCBC argue Plaintiff's Complaint should be dismissed for, among other reasons, failure to state a claim upon which relief can be granted. (*See generally* Docs. 24, 35). The Undersigned agrees that Plaintiff has failed to state a

claim against both Scotts and UCBC and, therefore, **RECOMMENDS DISMISSAL** of the claims. Because the proposed amendment suffers from the same deficiency, the Undersigned likewise **RECOMMENDS** that Plaintiff's Motion to Amend (Doc. 36) be **DENIED**.

### A. Plaintiff's Allegations

The following factual allegations, which are accepted as true for the purposes of evaluating the pending motions to dismiss, are taken directly from Plaintiff's Complaint. Importantly, however, while the Court is required to accept all well-pleaded factual allegations as true, it is not required to accept factual allegations that are "fantastic or delusional[.]" *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

From 1963 until 1990, W.R. Grace operated a mine in Libby, Montana, that extracted vermiculite, an especially carcinogenic form of asbestos. (Doc. 1 at 10). "For decades," Scotts' manufacturing facility in Marysville, Ohio contaminated the Marysville municipal water supply with vermiculite, or Libby Amphibole Asbestos, obtained from the Libby mines when Scotts made lawn and garden products at its Marysville, Ohio facilities. (*Id*. at 5, 9; Doc. 36 at 4). In 1999, Marysville purchased acreage to construct an up-ground reservoir and supporting water treatment facility to replace the municipal water system contaminated by Scotts. (Doc. 36 at 4). The reservoir was needed to provide Marysville, where ORW is located, with water for the next 50 years. (*Id*.). Although the reservoir was constructed to supply water to Marysville water users, Plaintiff alleged that ORW water users were never switched from the contaminated water system to the new unpolluted reservoir system. (*Id*. at 5).

On March 28, 2013, Plaintiff was conveyed to ORW to serve a sentence of incarceration. (*Id*. at 6; Doc. 1-2, at 3). Shortly thereafter she began to experience stomach pain caused by what she believed was an H-pylori infection. (Doc. 1-2 at 3–4). On April 23, 2013, Plaintiff was

transferred to Dayton Correctional Institute ("DCI"). (Doc. 36 at 6). After her arrival at DCI she complained about her stomach problems, but she says she was denied testing and treatment for H-Pylori until January 2016. (Doc. 1-2 at 4). Plaintiff was then transferred back to ORW on September 20, 2016. (Doc. 36 at 6). Shortly after her return to ORW, she was again treated for H-Pylori and other ailments. (Doc. 1-2, at 4–5). In 2016 or 2017, Plaintiff filed a complaint with the American Corrections Association and told them that she and another inmate had found flat, shiny, star-fish shaped particle in water used to make coffee. (*Id*. at 8). Plaintiff alleges that this matches the description for vermiculite. (*Id*.). Although she did not know that the contaminant was a dangerous asbestos at the time, she now knows that it was. (*Id*.). Plaintiff believes that the contaminated water at ORW exacerbated her stomach issues. (*Id*. at 5–6). She also fears she has contracted H-Pylori and cancer. (*Id*.). Plaintiff alleges she has "fully grieved this matter, and the grievances are attached to the Complaint." (*Id*. at 9). Although those grievances are not attached to the Complaint, she appears to allege they are dated February 28, 2019. (*Id*.)

Plaintiff alleges four causes of action against Scotts and, in her proposed Amended Complaint, seeks to add the CEO of Scott's, Jim Hagedorn, as a defendant. (*See generally* Doc. 36). First, Plaintiff alleges Scotts and Hagedorn breached their duty to avoid physically injuring her by contaminating the water supply and that this breach constitutes a state law tort of negligence. (*Id*. at 8). Plaintiff also alleges Scotts and Hagedorn are liable for negligent infliction of emotional distress and that their actions violated her Fourteenth Amendment Equal Protection Rights. (*Id*.). In addition, Plaintiff alleges Scotts and Hagedorn knowingly polluted the Marysville water with asbestos and continue to do so without being sanctioned by Marysville or U.S. EPA. (Doc. 1 at 65). Plaintiff claims that these actions were motivated by race and that they constitute a conspiracy to deprive her of her civil rights under 42 U.S.C. § 1985. (*Id*. at 65–66).

4

Concerning UCBC, Plaintiff alleges they failed to "properly and effectively operate and maintain" the water supply to ORW and have failed to "shut off the toxic water supply . . to prevent injury to Plaintiff and the inmates at ORW." (Doc. 36 at 5). Further, Plaintiff alleges that UCBC has known since 1999 that the municipal water supply is contaminated, and that the contaminated water is being supplied to ORW. (*Id.* at 5–6). She also appears to allege that UCBC, through its individual Commissioners, are liable for negligence, negligent infliction of emotional distress, and violations of her constitutional rights. (*Id.*).

### B. Standards of Review

#### 1. Motions to Dismiss

Rule 12(b)(6) requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id.* at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, although "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

    2. *Amendment*

Trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). That said, when a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). When interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted).

A district court's "outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion," but instead an abuse of discretion that is "inconsistent with the spirit of the Federal Rules." *Id*. (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave should be granted, however, where there is "undue delay, bad faith or dilatory motive on the part of the movant," or as relevant here, when the proposed amendment is futile. *Id*. Futility arises "if the [claim, even with the] amendment[,] could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017); *see also Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (denying leave to amend when the proposed amended pleading consisted of conclusory allegations without factual support).

### C. Failure to State a Claim

At base, Plaintiff's Complaint is filled with "vague and conclusory allegations unsupported by material facts[.]" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011).  She has failed to plead any facts that adequately support any of her claims against either Scotts or UCBC.  Specifically, she has not alleged any facts showing that either Scotts or UCBC are liable for negligence, negligent infliction of emotional distress, or violations of her constitutional rights.

To begin, while Plaintiff cursorily alleges Scotts' manufacturing facility contaminated the Marysville municipal water supply, she offers no "factual content" which would allow the Court to draw the "reasonable inference" that Scotts actually did this.  *Iqbal*, 556 U.S. at 678.  Nowhere in the Complaint does she offer any supportive factual content that Scotts polluted the Marysville municipal water supply and then colluded with the other Defendants to deprive ORW inmates of the clean water that the rest of Marysville enjoys.  Neither are there any factual allegations showing that any overt act was taken in furtherance of any alleged conspiracy.  Ultimately, while the Court acknowledges the seriousness of Plaintiff's allegations against Scotts, those claims cannot withstand dismissal without factual support.

Similarly, Plaintiff has not alleged any facts which would show UCBC is liable for negligence, negligent infliction of emotional distress, or violations of her constitutional rights.  There are no alleged facts showing how UCBC would have been involved in decisions about Marysville's water system, including a decision to switch the entire city's water supply to a new reservoir but to leave ORW connected to contaminated water.  As UCBC correctly contends, "the Complaint alleges over and over that the Commissioners were involved in switching Marysville's water supply but provides no dates, no names of people involved, [and] no information as to how the Commissioners became aware of asbestos contamination[.]"  (*See* Doc. 35 at 8).

7

Plaintiff is proceeding *pro se*. So her Complaint is to be construed liberally and must be held to a less stringent standard. *Erickson v. Pardus,* 551 U.S. 89, 94, (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, (1976)). Nevertheless, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. To do so would 'require . . . [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of advocate seeking out the strongest arguments and most successful strategies for a party.'" *Dixie v. Ohio,* No. 1:08-cv-0450, 2008 WL 2185487, at *1 (N.D. Ohio, May 23, 2008) (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985)). Given the overwhelming lack of factual support underpinning Plaintiff's claims against both Scotts and UCBC, dismissal is appropriate.

In an effort to save her case, Plaintiff seeks leave to amend her Complaint to add additional factual support for her claims. (*See* Doc. 36). Yet, as both Scotts and UCBC correctly argue, "[t]he Amended Complaint, like the original [], fails to state a claim upon which relief could be granted, and thus, the amendment would be futile." (*See* Doc. 39).

Plaintiff asserts that the proposed amendments are made "in addition to the original complaint" and amend only the parties, claims, and relief requested, and to clarify dates. (Doc. 36 at 1). Yet, the proposed amendment is "substantially identical to the original complaint," so much so that amendment would be futile. As to Scotts, the amended Complaint adds no new allegations or facts, only adding Scotts' CEO Jim Hagedorn as a Defendant. (*See* Doc. 36 at 3). Because she did not include any additional factual allegations against Mr. Hagedorn, Plaintiff has again failed to state a claim for relief. Further, as will be discussed, adding Mr. Hagedorn does not change the fact that neither he nor Scotts is a "state actor" pursuant to § 1983. *Tahfs v. Proctor*, 316 F.3d 584,

590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct."). Similarly, the proposed amendments do not include any additional factual allegations against UCBC. In fact, the proposed amended complaint mentions UCBC only briefly in connection with "Marysville's water supply and the construction of a new reservoir." (*See* Doc 36 at 4–5; Doc. 40 at 1–2). Because Plaintiff's proposed amended Complaint fails to provide any dates, names of people involved, or other information as to UCBC's role in allegedly switching Marysville's water supply, any such amendment would be futile.

As explained above, a motion to amend may be denied if allowing the proposed amendment would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Id*. (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Here, Plaintiff's claims against Scotts and UCBC in her original Complaint could not withstand a Rule 12(b)(6) motion to dismiss, as she failed to plead any facts to adequately support her claims. Plaintiff's proposed amended Complaint suffers from the same deficiency. Accordingly, the Undersigned **RECOMMENDS** Plaintiff's Motion to Amend (Doc. 36) be **DENIED**, as the proposed amendments are futile. *See Raymond v. Tennessee Valley Auth.*, No. 3:09-CV-048, 2011 WL 13123608, at *1 (E.D. Tenn. Apr. 14, 2011) (denying amendment where the proposed amended complaints were virtually identical to the [] operative complaints, and therefore "legally futile").

While Plaintiff's failure to state a claim for relief against Scotts and UCBC is, on its own, sufficient grounds to grant dismissal, these Defendants make several additional arguments in support of dismissal. The Court briefly discusses a few below.

### D. Scotts as a State Actor

Plaintiff alleges Scotts "use[d] [] vermiculite (asbestos) [from the Libby mine] to manufacture its lawn and yard products at its Marysville, Ohio facility, just down the road from [ORW.]" (Doc 1 at 6). As a result of this alleged contamination, says Plaintiff, she is being "subjected to [] asbestos in the water at [ORW]." (*Id*. at 34). Given this exposure, Plaintiff claims Scotts has violated her Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (*Id*. at 1). Scotts rebuts these allegations, arguing it is not subject to suit under § 1983 "because [it] is not a state actor." (Doc. 24 at 4).

It is well established that "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs*, 316 F.3d at 590 (6th Cir. 2003) (quoting *Sullivan*, 526 U.S. at 50). Clearly, Scotts and Mr. Hagedorn are private parties. There are instances when private parties may be deemed state actors for purposes of §1983. *Id*. But those instances arise only when there is such a "'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). This nexus exists where state private actors "conspired together to violate an individual's civil rights[.]" *Spears v. Bausch & Lomb*, No. C2-06-470, 2007 WL 764305 (S.D. Ohio Mar. 9, 2007).

Here, Plaintiff attempts to make this connection by summarily alleging that Scotts knowingly polluted the Marysville water supply with asbestos and continues to do so without sanction by Marysville or U.S. EPA. (Doc. 1 at 65, Doc. 29 at 3–4 (alleging Scotts conspired with "state officials" to deprive Plaintiff of her constitutional rights)). Beyond this cursory allegation, the Complaint is wholly devoid of any factual allegations that there existed an agreement between

Scotts and any of the public actor Defendants to deprive Plaintiff of her constitutional rights. That alone is fatal. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."). In addition, there are no factual allegations that an overt act was committed in furtherance of an alleged conspiracy that injured Plaintiff, nor that the public actor Defendants were involved in any of Scotts' alleged water pollution. In short, because Scotts and Mr. Hagedorn are not state actors, and Plaintiff has failed to plead a factual connection—conspiratorial or otherwise—between these two and the public actor Defendants, Plaintiff's § 1983 claims against Scotts fail.

**E. UCBC's Immunity**

UCBC also argues that it is immune to Plaintiff's negligence and negligent infliction of emotional distress claims. The Undersigned agrees that this is an additional basis for dismissal.

Chapter 2744 of the Ohio Revised Code governs whether a political subdivision, including its agencies and employees, has immunity from liability. *Snyder v. United States*, 990 F. Supp. 2d 818, 846 (S.D. Ohio), aff'd, 590 F. App'x 505 (6th Cir. 2014). Whether immunity attaches depends on the outcome of a three-tiered analysis set forth in O.R.C. § 2744.02(B). *Id*. (citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 317–18 (Ohio Sup. Ct. 2007)). The first tier sets forth a general grant of immunity: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." O.R.C. § 2744.02(A)(1). The second tier consists of exceptions to immunity found in O.R.C. § 2744.02(B)(1)–(5). But even if any of the second-tier

11

exceptions to immunity apply, immunity can still be "reinstated" if one of the defenses contained in O.R.C. § 2744.03(A)(1)–(5) applies at the third tier.

Here, UCBC contends that it enjoys the general grant of immunity for proprietary functions at the first tier but acknowledges that an exception to immunity applies at the second tier—that a political subdivision can be liable for injury "caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." O.R.C. § 2744.02(B)(2). Nevertheless, UCBC contends that a defense also applies at the third tier which reinstates UCBC's immunity. That defense is that a "political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the office or position of the employee." *Id*. at § 2744.03(A)(3).

UCBC correctly contends that even though there is an exception to immunity that applies at the second tier, the actions alleged in the Complaint constitute the type of discretionary acts that fall within the ambit of the third-tier defense related to discretionary acts. (Doc. 35 at 11–12). "A discretionary act under R.C. 2744.03 involves a heightened amount of official judgment or discretion . . . . [r]outine decisions that require little judgment or discretion . . . do not create a defense to liability." *Lincoln v. Watcon, Inc.*, No. 3:17-CV-181, 2018 WL 932036, at *4 (N.D. Ohio Feb. 16, 2018) (quoting *Toros v. Cuyahoga Cty. Bd. of Dev. Disabilities*, No. 99637, 2013 WL 5676279 *8 (Ohio App. 2013)). In this case, the alleged actions involve the decision to create a reservoir and switch an entire city's water supply to it and the decision to keep ORW on a different system. These are high-level discretionary decisions that make this defense applicable.

Accordingly, the Undersigned concludes that UCBC is immune to Plaintiff's negligence and negligent infliction of emotional distress claims.

### F. State Law Claims Against Scotts

Plaintiff alleges state law claims for negligence and negligent infliction of emotional distress stemming from Scotts alleged involvement in the contamination of Marysville's water supply. (Doc. 1 at 88–90). Given the above disposition, the Undersigned recommends not exercising supplemental jurisdiction over these claims.

When all federal claims are dismissed before trial, state-law claims "generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). Because Plaintiff's federal claims against Scotts must be dismissed, the Undersigned **RECOMMENDS** not exercising supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Mathis v. Doctor's Hosp. (West)*, No. 2:12-cv-358, 2012 U.S. Dist. LEXIS 80190 *9–10, 2012 WL 2114995 (S.D. Ohio June 11, 2012) (adopting recommendation not to exercise supplemental jurisdiction where federal claims failed).

### G. Remaining Arguments

Although Scotts and UCBC make additional arguments for dismissal, the Court does not need to address them given the recommendation that all claims against these Defendants be dismissed.

\*\*\*

In sum, Plaintiff has failed to state a claim against both Scotts and UCBC and her claims against them must be dismissed. Further, her attempt to ameliorate this deficiency though amendment similarly fails. Accordingly, the Undersigned **RECOMMENDS** Scotts' and UCBC's Motions to Dismiss (Docs. 24, 35) be **GRANTED** and that all of Plaintiff's claims against them be **DISMISSED**. The Undersigned further **RECOMMENDS** Plaintiff's Motion to Amend (Doc. 36) be **DENIED** as futile.

### III.     PLAINTIFF'S MEDICAL CLAIMS – EXHAUSTION

Plaintiff's claims against the remaining Defendants allege that she received inadequate medical care while incarcerated at ORW and DCI. (*See generally* Doc. 1). She lodges her claims under the Eighth Amendment's prohibition against cruel and unusual punishment. (*Id*.). These claims, however, have already been litigated in this Court.

As detailed above, this is not Plaintiff's first civil rights action. She previously filed suit in this Court's Western Division, asserting numerous claims, including that she received inadequate medical care while incarcerated at ORW and DCI. *See Williams v. Ohio Dept. of Rehabilitation and Corr.*, Case No. 3:16–cv–00384. The Court granted Defendants summary judgment on Plaintiff's inadequate medical care claims because she failed to exhaust her administrative remedies. (*Id*., at Doc. 40, 41, 42). Specifically, the Court found that Plaintiff "did not appeal the denials of her medical related grievances to the Chief Inspector's Office . . . [and] therefore [defendants have] met their burden to show that Plaintiff failed to administratively exhaust her Eighth Amendment medical claims." (*Id*. at Doc. 40).

It appears that the medical conditions supporting Plaintiff's Eighth Amendment claims in her previous action are the same as those alleged here. Specifically, in both cases Plaintiff complains about chronic stomach pains allegedly caused by H-pylori. (*See* Doc. 1-2 at 4–6). Importantly, while Plaintiff alleges she has "fully grieved this matter, and the grievances are attached to the Complaint," there are no grievances attached. (Doc. 1 at 9). Given this, Plaintiff is **ORDERED** to show cause within **fourteen (14) days** from the date of this Order, why the claims related to her medical treatment should not be dismissed for failure to exhaust. Said differently, Plaintiff is required to submit documentation that she exhausted her administrative remedies.

## IV. PLAINTIFF'S REMAINING MOTIONS

Along with her Complaint, Plaintiff filed Motions for: Temporary Restraining Order (Doc. 2); Temporary and Permanent Restraining Order (Doc. 3); Leave to Invoke Discovery (Doc. 4); Writ of Mandamus (Doc. 5); and Appointment of Counsel (Doc. 6). The Court discusses each in turn.

### A. Motions for Injunctive Relief

On December 16, 2020, along with her Complaint, Plaintiff filed two Motions seeking injunctive relief: A Motion for Temporary Restraining Order (Doc. 2); and a Motion for Temporary and Permanent Restraining Order (Doc. 3). In the first Motion, Plaintiff requests the Court enjoin Defendants ODRC and ORW from "withholding constitutionally required medical care." (Doc. 2 at 1). Plaintiff alleges she will suffer "irreparable harm absent an injunction." (*Id*. at 15). Next, Plaintiff requests the Court enjoin Defendants ODRC and ORW from "withholding constitutionally required safe water and confinement conditions free from contagious risk of disease." (Doc. 3 at 1). Plaintiff's case has not progressed to a point where such relief is warranted.

"TROs are extraordinary remedies that are granted only in rare circumstances." *Chandrasekaran v. Wolf*, No. 20-13247, 2021 WL 1137992, *2 (E.D. Mich. Mar. 25, 2021); *see also Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974) (noting that TROs often "run[ ] counter to the notion of court action taken before" both sides of a dispute have a full and complete "opportunity to be heard" and before the case is fully developed). Here, a number of Defendants have yet to be served and accordingly, have not had the "opportunity to be heard." *Weaver v. Whitmer*, No. 20-10519, 2020 WL 1284759, at *1 (E.D. Mich. Mar. 17, 2020) (denying a plaintiff's motion for a permanent restraining order, where the defendants had yet to be served). Similarly, regarding the alleged withholding of medical care, any such claim may not yet

15

be justiciable given Plaintiff's failure to exhaust. Until Plaintiff can show the Court that she has in fact administratively exhausted her claims, the Court cannot grant any injunctive relief.

For the foregoing reasons, Plaintiff's Motions for a Temporary Restraining Order (Docs. 2, 3) are **DENIED without prejudice subject to refiling**. Once all Defendants are properly served and Plaintiff has complied with the Court's Show Cause Order (*see infra* at 14), she may refile.

### B. Motion for Writ of Mandamus

Next, Plaintiff asks the Court for a "Writ of Mandamus ordering the United States Department of Health and Human Services and the United States Department of Transportation to furnish [Plaintiff] with requested public agency records[.]" (Doc. 5 at 1). The information Plaintiff seeks is "related to the studies done by [these agencies] . . . on . . . asbestos[,]" which she requested in March 2020. (*Id.* at 3).

"Mandamus is a 'drastic' and 'extraordinary' remedy available only if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Rimmer v. Holder*, No. 3:10-1106, 2011 WL 3565224 (M.D. Tenn. Aug. 15, 2011), *aff'd*, 700 F.3d 246 (6th Cir. 2012) (quoting *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)). No such circumstance exists here. If Plaintiff wishes to receive copies of these agency documents, the appropriate remedy is for her to submit a Freedom of Information Act ("FOIA") request. While Plaintiff may feel aggrieved that this process takes some time, that is not grounds for issuance of a writ. *Id.* (denying plaintiff's request for a writ of mandamus where the FOIA provided an "adequate and available remedy"). As with those discussed above, however, the Court will afford Plaintiff the opportunity to refile her Motion once all Defendants are served and have an opportunity to respond. Accordingly, Plaintiff's Motion for Writ of Mandamus (Doc. 5) is **DENIED without prejudice**.

### C. Motions for Discovery & Appointment of Counsel

In her final two Motions, Plaintiff asks the Court to "invoke discovery at once" and to appoint her counsel. (*See generally* Docs. 4, 6). These requests are premature.

There are still a number of Defendants that have yet to be served and no case schedule has been set. As a result, "it is impossible to evaluate what [] discovery is needed and whether the discovery is relevant and appropriately narrow." *Thomas v. Berghuis*, No. 2:12-cv-11707, WL 28038, at *2 (E.D. Mich. Jan. 2, 2013). Accordingly, Plaintiff's Motion for Leave to Invoke Discovery at Once (Doc. 3) is **DENIED without prejudice**.

Similarly, Plaintiff's request to appoint counsel is premature. Courts have "broad discretion in determining whether to appoint counsel for an indigent civil litigant." *Brooks v. Airmart Food Serv.*, No. 05-2893-B/V, 2006 WL 1699560, at *2 (W.D. Tenn. June 16, 2006). "It is the rare civil case in which a court must provide a party an attorney, and only 'exceptional circumstances' require deviating from this rule." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d at 606). "District courts look to the complexity of the case and the ability of the plaintiff to represent himself." *Cavin*, 927 F.3d at 461 (citing *Lavado*, 992 F.2d at 606).

This action has not progressed to the point where the Court is able to evaluate the merits of Plaintiff's claims beyond its initial review of the pleadings. Should Plaintiff's claims survive the pleadings stage, Plaintiff may renew her request for counsel. *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (en banc) ("[I]n considering an application for appointment of counsel, district courts should consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit."). Accordingly, Plaintiff's Motion to Appoint Counsel (Doc. 6) is **DENIED without prejudice**.

V. **SERVICE**

Finally, the Court addresses Plaintiff's issues with service.  After Plaintiff filed unexecuted copies of summonses for each Defendant (Doc. 16), the Court ordered her to resubmit properly completed summons and service forms.  (Doc. 23).  While Plaintiff subsequently submitted summons paperwork and forms, those too were deficient.  (*See* Docs. 31).  In fact, the only Defendants who have participated in this matter thus far, Scotts and UCBC, both argue they were not properly served.  (Doc. 24 at 11; Doc. 35 at 5–6).

It is crucial that each Defendant is properly served so that Plaintiff's case may progress to the merits.  Yet, given the disposition above—particularly considering the Order to Show Cause––the Court will refrain from considering issues with service of process until it is clear Plaintiff's Complaint will proceed past this initial review of the pleadings.

VI. **CONCLUSION**

The Undersigned **RECOMMENDS** Scotts' and UCBC's Motions to Dismiss (Docs. 24, 35) be **GRANTED**, and Plaintiff's Motions to Amend (Doc. 36) be **DENIED**.  Further, Plaintiff's Motions for:  Temporary Restraining Order (Doc. 2); Temporary and Permanent Restraining Order (Doc. 3); Leave to Invoke Discovery (Doc. 4); Writ of Mandamus (Doc. 5); and Appointment of Counsel (Doc. 6) are **DENIED without prejudice**.  Plaintiff is **ORDERED** to show cause within **fourteen (14) days** from the date of this Order, why the claims related to her medical treatment should not be dismissed for failure to exhaust.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:  September 13, 2021                                /s/ Kimberly A. Jolson
                                                                       KIMBERLY A. JOLSON
                                                                       UNITED STATES MAGISTRATE JUDGE