IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MELODY WILLIAMS,**

      **Plaintiff,**

  v.

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, et al.,**

      **Defendants.**

      Civil Action 2:20-cv-6424
      Judge Edmund A. Sargus, Jr.
      Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 100). For the following reasons, the Undersigned **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED**.

    **I.**    **BACKGROUND**

Plaintiff is a *pro se* prisoner currently incarcerated at Ohio Reformatory for Women ("ORW"), located in the city of Marysville, in Union County, Ohio. (Doc. 72 at 1). Defendants are numerous Ohio Department of Rehabilitation and Corrections ("ODRC") employees. (*Id.* at 4). On an initial screen, the Undersigned recommended that all claims be dismissed except for Plaintiff's Eighth Amendment claims against six Defendants: Ohio Department of Rehabilitation and Corrections ("ODRC"), ODRC Director Annette Chambers-Smith, Director of Nursing John Gardner, Dr. Andrew Eddy, Dr. Dawn Murray, and Odunola Gbenro-Ajidabe. (Doc. 44). The District Judge adopted the recommendation (Doc. 60), and Plaintiff filed an Amended Complaint, alleging denial of medical care and conditions of confinement against Defendants (1) Annette Chambers-Smith, (2) ODRC, (3) Dr. Andrew Eddy, (4) John Gardner, (5) Teri Baldauf, (6) Dr. Dawn Murray, and (7) Odunola Gbenro-Ajidabe (Doc. 72).

The following allegations are taken from Plaintiff's Amended Complaint and deposition. On September 20, 2016, Plaintiff was conveyed to ORW to serve a sentence of incarceration. (Doc. 99 at 12:14–15). Shortly thereafter, she began to experience stomach pain caused by what she believed was an H. pylori infection. (Doc. 72 at ¶ 15). Plaintiff further believes that the contaminated water at ORW exacerbated her stomach issues. (*Id.* at ¶¶ 15–29). Plaintiff says she had a perforated ulcer which causes "extreme waves of pain running through [her] back." (Doc. 99 at 19:5–7). To treat the back pain, Dr. Murray prescribed Plaintiff Ultram, a narcotic, and referred her to physical therapy. (*Id.* at 19:16–25). Plaintiff was taking that prescription for one to two years, but, when the pain would increase, Dr. Murray would give Plaintiff a shot of Toradol. (*Id.*). Later, Defendant Eddy denied Plaintiff's request for an MRI (*Id.* at 20:3–4), and Plaintiff was "taken off of the Ultram" because "it was removed from the formulary list for the prison." (*Id.* at 20:18–23). The medical staff at ORW replaced the Ultram with Elavil, Cymbalta, and Tegretol to help Plaintiff manage her pain. (*Id.* at 21:11–19). And, since her back pain is chronic, Plaintiff sees medical staff every ninety days. (Doc. 99 at 21:25).

Plaintiff also asserts that she is not kept separately from other inmates exposed to COVID-19, despite her COPD diagnosis making her especially vulnerable to the virus. (Doc. 72 at ¶¶ 36–38).

Now, Defendants move for summary judgment on all claims. (Doc. 100). Plaintiff did not file a response and the deadline to do so has long passed, so the Motion is ripe for consideration.

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to

2

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Ultimately, the Court asks, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

Plaintiff brings claims arising under the Eighth Amendment to be free from cruel and unusual punishment. (*See* Doc. 72). Particularly, she alleges that Defendants violated her civil rights by: (i) failing to protect her from contaminated water; (ii) being deliberately indifferent to a serious medical condition; and (iii) failing to protect her from exposure to COVID-19. (*See id.*). The Court addresses each constitutional claim in turn.

The Eighth Amendment applies to all of Plaintiff's claims and "protects inmates by imposing duties on prison officials, who must provide humane conditions of confinement and adequate food, clothing, shelter, and medical care and take reasonable measures to guarantee the safety of the inmates." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013) (citation, alterations, and internal quotation marks omitted). "To state a claim for violation of the

Eighth Amendment arising from conditions of confinement, a prisoner must plead (1) that 'the failure to protect from risk of harm [was] objectively sufficiently serious,' and (2) that 'the official acted with deliberate indifference to inmate health or safety.'" *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010)). Regarding this subjective second element, "an inmate must show that prison officials had a sufficiently culpable state of mind." *Berkshire v. Dahl*, 928 F.3d 520, 535 (6th Cir. 2019) (citations and internal quotation marks omitted). In particular, the culpable state of mind is "more blameworthy than negligence," and is satisfied "if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

### A. Contaminated Water

Plaintiff alleges Defendants violated the Eighth Amendment by failing to address contamination of ORW's water supply by vermiculite asbestos. (Doc. 72 at 7–8). And she says the contamination led to her contracting H. pylori. (*Id.*). H. pylori is bacteria than can cause infection in the stomach or small intestine and result in peptic ulcer disease and gastritis. *See* H. Pylori Infection, https://my.clevelandclinic.org/health/diseases/21463-h-pylori-infection (last visited May 11, 2023).

Denial of water as a "minimal civilized measure of life's necessities" is a substantial risk of serious harm. *Barker v. Goodrich*, 649 F.3d 428, 436 (6th Cir. 2011). But here, Defendants say that summary judgment in their favor is appropriate because Plaintiff has failed to provide any objective evidence that she has been denied clean water. (Doc. 100 at 8–9). The Undersigned agrees. "[T]o show a genuine issue of material fact, the nonmoving party may not rely on mere allegations without any probative evidence tending to support the complaint." *Liberty Lobby, Inc.*,

4

477 U.S. at 249.  Here, Plaintiff has not offered any evidence to support her water contamination claim.

Instead, Plaintiff relies solely on two cases to support her claim that ORW's water was contaminated.  (*See* Doc. 99 at 30–31).  But those two cases—*Beveridge & Diamond v. EPA*, 78 F. Supp. 3d 199 (D.D.C. 2015) and *Hemphill v. City of Marysville,* No. 14-99-48, 2000 WL 297324 (Ohio App. 3 Dist. Mar. 21, 2000)—do not confirm that the ORW's water is contaminated, nor do they suggest that Defendants are somehow culpable for failing to address water contamination.  In fact, neither case even mentions ORW, its water supply, or any of its employees.  *Id.*

Notably, the Court has given Plaintiff two years to conduct discovery (*see* Docs. 1, 74, 98), but she has failed to provide any evidence of water contamination at ORW.  Accordingly, no reasonable jury could return a verdict in Plaintiff's favor on her water contamination claims, and Defendants are entitled to summary judgment.

### B. Denial of Medical Care

Beyond arguing that contaminated water caused her medical ailments, Plaintiff alleges that Defendants have denied her proper medical care for back and stomach pain.  (Doc. 72 at 5–6). When evaluating a claim for deliberate indifference to a prisoner's medical care, the Court "must distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)).  "Where a prisoner alleges only that the medical care [s]he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'" *Id.*

Here, Plaintiff has received—and continues to receive—medical care, but she argues that the care has been inadequate.  The record shows otherwise.  To treat her pain, Dr. Murray

prescribed Plaintiff Ultram, a narcotic, and referred her to physical therapy. (Doc. 99 at 19). Plaintiff was taking that prescription for one to two years, but, when the pain would increase, Dr. Murray would administer a shot of Toradol. (*Id.*). Later, Defendant Eddy denied Plaintiff's request for an MRI, and Plaintiff was "taken off of the Ultram" because "it was removed from the formulary list for the prison." (*Id.* at 20). The medical staff at ORW then replaced the Ultram with Elavil, Cymbalta, and Tegretol to help Plaintiff manage her pain. (*Id.* at 21). Because her pain is chronic, Plaintiff sees medical staff every ninety days. She also has had x-rays taken of her back as recently as November 2022. (*Id.* at 27–28).

      Despite this treatment record, Plaintiff claims that Defendants should have conducted an MRI scan of her lower back and should not have changed her prescribed pain relief medication. (Doc. 72 at 5–6). Yet, it is well-settled that the decision whether to perform diagnostic testing or a certain drug regimen is a "classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107–08 (1976) (holding that the Court of Appeals erred in holding that alleged insufficiency of medical treatment for prisoner's back pain warranted remand); *Truss-El v. Bradley*, 80 F. App'x 425, 426–27 (6th Cir. 2003) (order) (finding that a nurse's treatment "constituted negligence at most" where she "treated [the inmate's] facial lacerations[ ] and [ ] fail[ed] to detect his cracked ribs" despite the inmate's "requests to be taken to the hospital emergency room" after getting beaten up); *Tapp v. Banks*, 1 F. App'x 344, 352–53 (6th Cir. 2001) (finding no Eighth Amendment violation where the jail personnel failed to treat the inmate for his fractured patella despite the inmate telling "jail personnel about his pain" because it could not find personnel were deliberately indifferent where, among other factors, the doctor provided an "inaccurate diagnosis" and the "swelling in the [inmate's] knee" "could occur with either" "a bruise or a fracture"); *Boynton v. Henderson-Pero*, No. 14-13846, 2015 U.S. Dist. LEXIS 119902,

6

at *16–18 (E.D. Mich. Aug. 6, 2015) (rejecting inmate plaintiff's assertion that defendant doctor "was deliberately indifferent because she refused to refer him to an off-site specialist," finding that "these facts merely present a difference of medical opinion"), adopted and affirmed by, *Boynton v. Henderson-Pero*, No. 14-13846, 2015 U.S. Dist. LEXIS 118947, 2015 WL 5243886 (E.D. Mich., Sept. 8, 2015); *Jones v. Benitez*, No. 15-2082, 2015 U.S. Dist. LEXIS 81855, at *20, 2015 WL 3892208 (W.D. Tenn. June 24, 2015) ("The failure to approve a consultation with a specialist does not establish deliberate indifference. 'A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court.'") (quoting *Estelle*, 429 U.S. at 107); *Atakpu v. Lawson*, No. 1:05-CV-00524, 2008 WL 5233467, at *9 (S.D. Ohio Dec. 11, 2008) ("That plaintiff was treated conservatively following his initial complaints of shoulder pain does not establish deliberate indifference to his medical need.").

Again, "[a]llegations 'that more should have been done by way of diagnosis and treatment' and 'suggest[ions]' of other 'options that were not pursued' raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d 721, 741 (6th Cir. 2018) (citing *Estelle*, 429 U.S. at 107). Here, Plaintiff is routinely treated for her pain. Diagnostic testing has been done, and pharmaceuticals and physical therapy have been prescribed and administered. No reasonable jury could find that the alleged inadequate medical care amounted to a complete denial of medical care demonstrating deliberate indifference. Accordingly, Defendants are entitled to summary judgment on this claim.

### C. COVID-19

Plaintiff's third claim alleges that Defendants did not prevent the spread of COVID-19 at ORW. (Doc. 72 at 9–11). "In the COVID 19 context, courts routinely have found that the

objective component of a deliberate indifference claim has been met." *Shine-Johnson*, 2020 WL 656567, at *7 (collecting cases). Still, a plaintiff must show that a defendant acted with deliberate indifference to the inmate's health or safety. *Taylor*, 505 F. App'x at 477. Here, Plaintiff mentions she is no longer pursuing her COVID-19 claim in her deposition. (Doc. 99 at 45–46). But, even discounting that statement, Plaintiff has not demonstrated that Defendants' inactions went beyond mere negligence and rose to the level of "recklessly disregarding [the] risk" COVID-19 posed to Plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see, e.g.*, *Shine-Johnson*, 2020 WL 656567, at *8–9 (finding that allegations that Defendant Warden failed to quarantine symptomatic prisoners, combined with purported statements he intended to let the virus "run its course" throughout the prison, sufficiently pled subjective intent to survive initial screening).

Although neither Plaintiff nor Defendants have presented sufficient evidence to support their positions as to the COVID-19 claim, summary judgment may still be granted "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 323. Adequate time has passed for both parties to gather the necessary evidence (*see* Docs. 1, 74, 98), yet there has been no evidence put forward to support Plaintiff's COVID-19 related § 1983 claim.

Plaintiff has not sufficiently alleged, let alone supported by evidence, the subjective intent required for her conditions-of-confinement claim. No reasonable jury could return a verdict in Plaintiff's favor on her conditions-of-confinement claim, and Defendants are thus entitled to summary judgment.

### D. Qualified Immunity

Beyond challenging the merits of Plaintiff's constitutional claims, Defendants have asserted qualified immunity as a defense. And, while the Undersigned recommends that Defendants' Motion for Summary Judgment (Doc. 100) be granted for each of Plaintiff's claims, Defendants are also immune from liability. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 141 S.Ct. 52, 53 (2020). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Since the Defendants have raised the qualified immunity defense, Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)).

Qualified immunity is proper when either the officer's behavior was not constitutionally violative or the officer acted reasonably in a way which they did not believe violated any constitutional rights. *Taylor v. Riojas,* 141 S. Ct. 52, 53 (2020). As described above, no constitutional violation has occurred.

### IV. CONCLUSION

For the reasons stated, the Undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 100) be **GRANTED**.

9

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: May 12, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE